UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALEJANDRO VELEZ,
    *Plaintiff*,

v.

LIEUTENANT HARRIS *et al.*,
    *Defendants*.

No. 3:17-cv-1884 (VAB)

**INITIAL REVIEW ORDER**

Alejandro Velez ("Plaintiff"), incarcerated at the Cheshire Correctional Institution, filed a civil Complaint under 42 U.S.C. § 1983 against Lieutenant Harris and Correctional Officers Rivard, Berloni, Field, Pacileo, and Brouwer (collectively "Defendants"). Mr. Velez alleges that Defendants, in both their individual and official capacities, used excessive force against him and failed to intervene/protect him from harm in violation of his Fourth, Eighth, and Fourteenth Amendment rights and state law.

For the following reasons, the claims against Defendants in their official capacity are **DISMISSED**, the Fourth and Fourteenth Amendment claims are **DISMISSED**, and the Eighth Amendment and state law claims against Defendants in their individual capacity are allowed to **PROCEED**.

**I.    FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

    **A.    Factual Allegations**

On February 26, 2016, Mr. Velez alleges that a prison official at Corrigan-Radgowski Correctional Institution issued a disciplinary report to Mr. Velez for indecent exposure. Compl. ¶ 2, ECF No. 1. Later that day, Lieutenant Harris and Officers Rivard, Berloni, Field, Pacileo, and

1

Brouwer arrived at Mr. Velez's cell to escort him to the restrictive housing unit. *Id.* ¶ 3. Officer Pacileo videotaped the escort. *Id.* ¶ 4.

After an officer opened the cell door, Lieutenant Harris allegedly sprayed Mr. Velez in the face with mace. *Id.* ¶¶ 7–9. Officers Rivard, Berloni, and Field entered the cell and allegedly threw Mr. Velez against the wall. *Id.* ¶ 11. Officer Rivald allegedly punched Mr. Velez in the face, neck and body and swore at him. *Id.* ¶ 12. Officer Pacileo also allegedly punched and kneed Mr. Velez. *See id.* ¶ 14. Although Officers Rivard, Berloni, Field, and Pacileo had complete control of Mr. Velez, Officer Rivard allegedly continued to punch Mr. Velez in the face, head, neck, stomach, ribs and penis and forcefully kneed him. Officer Pacileo allegedly continued to assault Mr. Velez, as well. *Id.* ¶¶ 16–18. Mr. Velez claims that Lieutenant Harris refused to intervene and stop the assaultive behavior of Officers Rivard and Pacileo. *Id.* ¶ 21.

Officers Rivard, Berloni, Field and Pacileo then threw Mr. Velez to the floor of the cell. *Id.* ¶ 22. Mr. Velez alleges the officers continued to assault him as he lay on the ground. *Id.* ¶¶ 23, 26. Lieutenant Harris then allegedly entered the cell, directed Mr. Velez to stop resisting and sprayed him in the face with mace. *Id.* ¶ 24.

Following the mace, Mr. Velez claims that Officers Rivard, Berloni, Field, and Pacileo handcuffed him behind his back and stood him up. *Id.* ¶ 27. At that point, Mr. Velez noticed that Officer Brouwer was videotaping the incident. *Id.* ¶¶ 28–29. Allegedly, Officer Brouwer never made any attempt to stop the other officers from assaulting Mr. Velez. *Id.* ¶ 34.

During Mr. Velez's escort to the restrictive housing unit, Officers Berloni and Pacileo allegedly twisted and turned Mr. Velez's handcuffs and caused them to dig into his wrists. *Id.* ¶ 30. A nurse treated Mr. Velez for the effects of the mace, but did not treat an injury to his leg. *Id.* ¶ 35.

Mr. Velez allegedly suffered the following injuries from the force used against him by Officers Rivard, Berloni, Field, and Pacileo: bruises and swelling to his face, pain in his neck, ribs and lower back, nerve damage to both of his wrists, a gash on his right shin, and emotional anguish. *Id.* ¶¶ 36–43. Mr. Velez made multiple requests for treatment for the gash in his leg. *Id.* at 9 ¶¶ 44–48.

On March 8, 2016, a nurse examined the injury to Mr. Velez's right shin, cleaned it and applied a dressing to it. A doctor prescribed an antibiotic. *Id.* ¶¶ 47–48. On March 23, 2016, a doctor examined Mr. Velez's leg injury, re-prescribed an antibiotic and ordered an x-ray. *Id.* ¶¶ 50–51. Mr. Velez filed requests and grievances regarding the use of force by Officers Rivard, Berloni, Field, and Pacileo, and Lieutenant Harris. *Id.* ¶¶ 49, 52.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), a court must review prisoner civil complaints against governmental actors and "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." *Id.* Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of

action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)). Although courts still have an obligation to interpret "a pro se complaint liberally," the complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

### III. DISCUSSION

Alejandro Velez ("Plaintiff") alleges that the Defendants, in both their individual and official capacities, used excessive force against him and failed to intervene or protect him from harm in violation of his Fourth, Eighth, and Fourteenth Amendment rights and state law.

Upon completion of its initial review under 28 U.S.C. § 1915A(b), the Court concludes that Mr. Velez's Eighth Amendment and state law claims against Defendants in their individual capacity will proceed. The remaining claims must be dismissed.

#### A. Official Capacity Claims

Mr. Velez is suing Defendants in both their individual and official capacities and seeks punitive and compensatory damages from Defendants for violations of his federal constitutional rights and violations of state law. The requests for monetary damages for violations of Mr. Velez's federal constitutional rights by the defendants in their official capacities are barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 167 (1985). All such claims against the defendants are dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

The Connecticut Supreme Court has held that the doctrine of sovereign immunity protects the state and state officials in their official capacities from lawsuits seeking monetary damages, unless the plaintiff obtains a waiver from the claims commissioner prior to bringing the action against the state or state officials in their official capacities. *See Miller v. Egan*, 265 Conn.

301, 313-18, 828 A.2d 549, 558–61 (2003). In this case, there is no allegation that Mr. Velez received permission from the claims commissioner to sue the State of Connecticut. Because the State has not waived its immunity from suit for money damages, the request for monetary damages from the defendants in their official capacities for violations of state law are also dismissed. *See* 28 U.S.C. § 1915A(b)(2).

### B. Eighth Amendment Claims – Individual Capacity

Mr. Velez alleges that Defendants failed to protect him from assault or harm from the other defendants. He also contends that Defendants used excessive force against him in violation of the Eighth Amendment. Compl. ¶¶ 56, 60.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials, to "ensure that inmates receive adequate food, clothing, shelter and medical care" and are confined in a "safe[]" environment. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (internal quotation marks and citations omitted).

#### 1. Excessive Force

The Supreme Court has established the minimum standard to be applied in determining whether force by a correctional officer against a sentenced inmate states a constitutional claim under the Eighth Amendment in contexts other than prison disturbances. *See generally Hudson v. McMillian*, 503 U.S. 1 (1992). When an inmate claims that excessive force has been used against him by a prison official, he has the burden of establishing both an objective and subjective component to his claim. *Hudson*, 503 U.S. at 20; s*ee also Romano v. Howarth*, 998

5

F.2d 101, 104–105 (2d Cir. 1993) ("The Supreme Court has discerned that an Eighth Amendment claim comprises both an objective and subjective component.").

To meet the objective component, Plaintiff must allege that Defendants' conduct was serious enough to have violated "contemporary standards of decency." *Hudson*, 503 U.S. at 8 (internal quotation marks and citation omitted). The extent of Plaintiff's injuries as a result of the defendant's conduct is not a factor in determining the objective component. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (noting "core judicial inquiry" is "not whether a certain quantum of injury was sustained," but rather whether unreasonable force was applied given the circumstances).

The subjective component requires Plaintiff to show that the prison officials acted wantonly and focuses on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (citing *Whitley v. Albers*, 475 U.S. 312, 320–321 (1986)). The court considers factors including "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* (internal quotations and citation omitted).

Mr. Velez claims that he did not offer any resistance when Lieutenant Harris entered his cell to apply restraints and to escort him to the restrictive housing unit. Despite that, she allegedly sprayed Mr. Velez directly in the face with mace. Mr. Velez alleges that Officers punched, kicked and kneed him while he was standing up and also after throwing him to the ground of his cell. Mr. Velez claims that even after they had full control of his limbs, the officers continued to use force against him. Officers Pacileo and Berloni also twisted and pulled his handcuffs during the escort to the restrictive housing unit causing him injury. Mr. Velez alleges

that he suffered numerous injuries as a result of the use of unnecessary force by Officers Rivard, Berloni, Field, Pacileo and Lieutenant Harris. Thus, he has plausibly alleged a substantial threat of serious harm and has met the objective prong of the Eighth Amendment standard. *See Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . This is true whether or not significant injury is evident.") (citation omitted). With respect to the subjective prong, a reasonable inference could be drawn that Officers Rivard, Berloni, Field, Pacileo and Lieutenant Harris used more force than was necessary to gain control over Mr. Velez in order to apply restraints to his wrists and to escort him to the restrictive housing unit. Thus, the Eighth Amendment excessive force claims will proceed against Officers Rivard, Berloni, Field, Pacileo, and Lieutenant Harris in their individual capacities.

## 2. Failure to Intervene/Protect from Harm

Mr. Velez also alleges that Officers Pacileo and Brouwer and Lieutenant Harris failed to protect him from harm from every other Defendant. As indicated above, the Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates in their custody" and precludes prison officials from the "use excessive force against [inmates]." *Farmer*, 511 U.S. at 832–33 (internal quotation marks and citations omitted). Furthermore, it is well-established in the Second Circuit that a law enforcement officer "is under a duty to intercede and prevent fellow officers from subjecting a citizen to excessive force, and may be held liable for his failure to do so if he observes the use of force and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citing *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)); *see also Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene

to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."); *Moore v. Parsons*, No. 3:18-CV-00507 (CSH), 2018 WL 1882858, at *6 (D. Conn. Apr. 19, 2018) (concluding inmate had "stated a valid claim for failure to intervene against" a correctional officer and lieutenant).

To state a claim of failure to protect or deliberate indifference to health or safety under the Eighth Amendment, an inmate again must demonstrate both an objective and a subjective element. To meet the objective element, Plaintiff must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessity[y]" or a "substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). To meet the subjective element, Plaintiff must allege that Defendants possessed culpable intent; that is, the officials knew that he faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action. *See id.* at 834, 837. Thus, an allegation of "mere negligen[t]" conduct is insufficient. *Id.* at 835. Rather, the subjective element requires that Plaintiff allege that Defendants acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *See Jean–Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit

collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill*, 839 F.2d at 11–12).

Plaintiff alleges that Officer Pacileo was initially assigned to videotape his extraction from Plaintiff's cell and that Officer Pacileo observed Lieutenant Harris spray a chemical agent in Plaintiff's face. Officers Rivard, Berloni and Field use excessive physical force against him, but Officer Pacileo took no steps to intervene and, in fact, subsequently engaged in using excessive force himself. Mr. Velez alleges that at some point, Officer Brouwer took over the video camera and began to videotape the use of force by Officers Officers Rivard, Berloni, Field, Pacileo and Lieutenant Harris and that he failed to intervene to stop the other officers from using force. Mr. Velez states that between the times that Lieutenant Harris deployed a chemical agent into his face, she allegedly failed to intervene to stop Officers Rivard, Berloni, Pacileo, and Field from using physical force against him.

As indicated above, Mr. Velez has asserted sufficient allegations regarding the injuries he sustained to meet the objective component of the Eighth Amendment standard. He has also plausibly alleged that Officer Pacileo, Officer Brouwer, and Lieutenant Harris were aware of the use of force by other Defendants, had sufficient time to intervene, but took no steps to abate the use of force or harm suffered by him. Additionally, Plaintiff has asserted sufficient facts to meet the subjective prong of the Eighth Amendment standard for deliberate indifference to safety and the failure to intervene. The claims of deliberate indifference to safety/failure to protect from harm and failure to intervene will proceed against Officers Pacileo, Brouwer and Lieutenant Harris in their individual capacities.

### 3.     Fourth and Fourteenth Amendment claims

Mr. Velez generally asserts that Defendants violated his rights under the Fourth and Fourteenth Amendments. The United States Supreme Court has stated that an individual is protected by different constitutional provisions depending on his or her status at the time the force was used by law enforcement or correctional officials. *See Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). "The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Mr. Velez had already been convicted at the time of the alleged uses of force by the defendants. Department of Correction records reflect that Mr. Velez was sentenced on May 29, 2015, well before the incident on February 26, 2016 that is the subject of this complaint. Thus, the Eighth Amendment, rather than the Fourth Amendment, is applicable to the excessive force claims asserted by Mr. Velez. There are no other allegations that state a plausible claim under the Fourth Amendment. Thus, the Fourth Amendment claims are dismissed. See 28 U.S.C. § 1915A(b)(1).

The Supreme Court has held that a pretrial detainee's excessive force claim is properly brought under the Fourteenth Amendment. *See Graham*, 490 U.S. at 395, n.10 ("It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.") (citing *Bell v. Wolfish*, 441 U.S. 520, 535–539 (1979)). Once a defendant has been convicted and sentenced, however, "the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified.'" *Id.* (quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)). Thus, "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not

the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham*, 490 U.S. at 395); *see also Medeiros v. O'Connell*, 150 F.3d 164, 169 (2d Cir. 1998) (same).

Here, the excessive force and failure to protect/intervene claims are covered by the Eighth Amendments. Thus, "[a]ny protection that substantive due process affords" Mr. Velez as a "convicted prisoner[s] against excessive force is . . . at best redundant of that provided by the Eighth Amendment." Graham, 490 U.S. at 395 n.10. To the extent that Mr. Velez asserts a due process claim under the Fourteenth Amendment, the claim is therefore dismissed. *See* 28 U.S.C. § 1915A(b)(1).

Because there are no other facts to support a claim under the Fourteenth Amendment, all claims brought pursuant to the Fourteenth Amendment are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### 4. State Law claims

Mr. Velez alleges that Defendants engaged in conduct that constitutes assault, battery and intentional infliction of emotional distress under Connecticut law. All three state law claims will proceed.

In Connecticut, there are two elements of the tort of civil assault: (1) the defendant must have "intend[ed] to cause a harmful or offensive contact . . . or an imminent apprehension of such contact," with another person, and (2) the other person was actually "put in imminent apprehension" as a result of the contact. *See Simms v. Chaisson*, 277 Conn. 319, 331, 890 A.2d 548, 555–56 (2006) (internal quotation marks and citation omitted). The tort of battery also requires two elements: (1) the defendant must have "intend[ed] to cause a harmful or offensive contact . . . or an imminent apprehension of such contact," with another person, and (2) "a

11

harmful contact with the" other person results either "directly or indirectly." *Id.* at 331, 890 A.2d at 555 (internal quotation marks and citation omitted). Because the excessive force claims against Officers Rivard, Berloni, Field, Pacileo, and Lieutenant Harris are based on the same facts as the assault and battery claims, the Court will also permit the state law assault and battery claims to proceed against those same defendants in their individual capacities. *See Boudreau v. Smith*, 2017 WL 2979682, at *5 (D. Conn. July 12, 2017) (courts "should exercise supplemental jurisdiction . . . when federal constitutional claim of excessive force and assault claim are so tightly interwoven that decision on former will collaterally estop litigation of latter").

In Connecticut, a claim of intentional infliction of emotional distress requires showing: "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe." *Reyes v. City of Bridgeport*, 152 Conn. App. 528, 543 n.13 (2014). Conduct is "extreme and outrageous" when it "exceeds all bounds usually tolerated by decent society." *Id.*

Mr. Velez alleges that Officers Rivard, Berloni, and Field entered his cell and assaulted him, even though he offered no resistance to being placed in handcuffs. The assault involved Officers Rivard, Berloni, Field, and Pacileo throwing Mr. Velez against the wall and onto the floor and kicking, punching and kneeing Mr. Velez in the face, neck, stomach, ribs and penis. Lieutenant Harris allegedly deployed mace directly into Mr. Velez's face without provocation on two occasions. The use of force continued even when the defendants had gained full control

12

of Mr. Velez. Mr. Velez also alleges that Officers Pacileo and Brouwer videotaped the incident at different times and failed to intervene.

At this initial screening phase, Mr. Velez has stated a plausible claim of intentional infliction of emotional distress against all defendants for using excessive force and failing to intervene. That claim will proceed against all defendants in their individual capacities.

**ORDERS**

For the reasons discussed above, the Court enters the following orders:

(1) The requests for monetary damages from the defendants in their official capacities for violations of state and federal law are **DISMISSED** under 28 U.S.C. § 1915A(b)(2) and the Fourth and Fourteenth Amendment claims against all defendants in their individual capacities are **DISMISSED** under 28 U.S.C. § 1915A(b)(1). The Eighth Amendment excessive force claim will **PROCEED** against Officers Rivard, Berloni, Field, Pacileo and Lieutenant Harris in their individual capacities, the Eighth Amendment failure to protect/deliberate indifference to safety and failure to intervene claims will **PROCEED** against Officers Pacileo and Brouwer and Lieutenant Harris in their individual capacities, the state law claims of assault, battery and intentional infliction of emotional distress will **PROCEED** against all defendants in their individual capacities. The Motion for Order, ECF No. 10, seeking the court's review of the complaint is **DENIED**.

(2) Within twenty-one (21) days of this Order, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for each defendant and mail a copy of the complaint, this order and a waiver of service of process request packet to each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of each request. If

13

any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests need not be filed with the court.

(5) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

(6) The Pro Se Prisoner Litigation Office shall send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of August, 2018.

                                                /s/ Victor A. Bolden  
                                                VICTOR A. BOLDEN  
                                                UNITED STATES DISTRICT JUDGE